IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TELADOC, INC., TELADOC PHYSICIANS, P.A., KYON HOOD, and EMMETTE A. CLARK, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 1:15-cv-00343-RP |
| TEXAS MEDICAL BOARD, MICHAEL ARAMBULA, JULIE K. ATTERBURY, MANUEL G. GUAJARDO, JOHN R. GUERRA, J. SCOTT HOLLIDAY, MARAGERT C. MCNEESE, ALLAN N. SHULKIN, ROBERT B. SIMONSON, WYNNE M. SNOOTS, PAULETTE B. SOUTHARD, KARL W. SWANN, SURENDA K. VARMA, STANLEY S. WANG, and GEORGE WILLEFORD III, individually and in their capacities as members of the Texas Medical Board, | § § § § § § § § § § § § § § § | JURY TRIAL DEMANDED |
| Defendants. | § | |

**BRIEF OF TDINDUSTRIES, INC. AS AMICUS CURIAE IN SUPPORT OF
PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION**

COMES NOW, TDIndustries, Inc. ("TD") and hereby submits to the Court its brief amicus curiae in support of Plaintiffs' Application for a Preliminary Injunction, and would respectfully show the Court as follows:

**I.**

TDIndustries, Inc. is a Texas based, 100% employee-owned, premier mechanical construction and facility service company, employing approximately 1,650 partners/employees ("Partners") across the state of Texas. *See* Exhibit A, Declaration of Maureen Underwood, dated

1

May 13, 2015. TD is equipped to handle any size project but focuses primarily on commercial construction. *See id*.

TD is self-insured, but as a stand-alone benefit, TD subscribes to Teladoc by paying a monthly subscription fee of $1.40 per Partner (including dependents). *See id*. The subscription fee totals approximately $27,770 per year as TD has approximately 1,650 Partners (and their dependents) eligible to participate in the service. *See id*. TD began subscribing to Teladoc in January 2015. *See id*.

In making the decision to subscribe to Teladoc services, TD was acting under a strategic initiative to provide better benefits and better access to healthcare for its Partners and their families. *See id*. Over the course of several years, TD researched several companies who offered telehealth services. *See id*. TD concluded that using Teladoc services would be beneficial to its Partners because it found Teladoc to provide the best combination of experience, stability, and value. *See id*.

Those Partners who choose to use Teladoc's services pay a co-pay of $10 for a consultation. *See id*. To use Teladoc's services, Partners register with Teladoc, complete a health survey with a medical history, and can then request a consultation with a doctor. *See id*. Once a consultation request is submitted, a physician typically calls the Partner/patient back within ten to twenty minutes. *See id*.

Although TD only began subscribing to Teladoc four months ago, TD Partners already have a 9% participation rate. *See id*. That participation rate has increased in each of the four months that TD has subscribed to Teladoc services, and the rate is expected to increase further. *See id*. Notably, based on the average cost of an office visit for a TD Partner versus the cost of using Teladoc services, a 5-6% participation rate by TD Partners allows TD to recapture its costs

through plan savings. *See id*. For those participating Partners, 80% report a service rating of "excellent" and 20% report a service rating of "good" after their Teladoc consultation. *See id*.

## II.

A plaintiff seeking a preliminary injunction must establish that the preliminary injunction will not disserve the public interest. *See e.g., Ridgely v. Fed. Emergency Mgmt. Agency*, 512 F.3d 727 , 734 (5th Cir. 2008). That standard is met here: the preliminary injunction sought by Plaintiffs serves the interests of the public and maintains the status quo. Because TD is a commercial construction company and many of its Partners work in the field and live in rural areas, TD estimates that cessation of Teladoc services would greatly affect TD Partners and hinder production for TD through increased sick leave and absenteeism. *See* Exhibit A. TD has approximately 200 work sites throughout the state of Texas. *See id*. In addition, TD employs a mobile workforce, and many employees are often temporarily located away from their home location while completing an assignment. *See id*. TD chose to use Teladoc because it believed that without Teladoc many Partners would have to take off work to see a doctor in person and potentially drive long distances to make office visits, or these individuals would simply not seek the care they needed, all leading to a reduction in productivity for TD. *See id*.

It is also expected that the cessation of Teladoc services would affect Partners negatively because it will cause delay in treatment or prevent treatment, due to increased costs for doctor visits and the unavailability of alternative means of access to doctors. *See id*. As an example, the TD Executive Vice President of Human Resources, Maureen Underwood, has personally used Teladoc services. *See id*. Because she had pre-registered with Teladoc and submitted her medical history, she was able to contact Teladoc via the telephone. *See id*. After answering a series of questions and confirming her allergies and pharmacy, she received a call from a board

certified physician within five minutes of contacting Teladoc. *See id*. The physician was able to provide a prescription for her which she was able to obtain on her way home from work (within an hour of making the call). *See id*. Had she not been able to access Teladoc, she would have had to wait to see her doctor until either the next day or later in the week, taken time off from work to do so, and not received the prescription she needed until even later, and her healthcare costs would have been higher. *See id*.

Generally speaking, the courts have recognized the significant public interest in protecting citizens' access to health care. *See e.g.*, *Managed Pharm. Care v. Jolly*, 603 F.Supp.2d 1230 (C.D. Cal. 2009) (granting preliminary injunction to prevent enforcement of newly enacted Assembly Bill 1183 affecting Cal. Welf. & Inst. Code § 14105.0191(b)(3) which would have reduced by five percent payments to pharmacies for prescription drugs provided under the Medi-Call fee-for-service program) ("[T]here is also a public interest in ensuring access to health care."); *Int'l Res., Inc. v. N.Y. Life Ins. Co.*, 950 F.2d 294, 302 (6th Cir. 1991) (granting a preliminary injunction compelling New York Life to continue making payments under the disputed coverage of a group health insurance policy); *Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 659 (9th Cir. 2009), *vacated and remanded on other grounds*, 132 S. Ct. 1204, 182 (2012) (holding that "there is a robust public interest in safeguarding access to health care for those eligible for Medicaid, whom Congress has recognized as 'the most needy in the country.'") The effect of implementing Rule 190.8 and preventing Teladoc from operating in Texas is that TD Partners will have significantly decreased access to healthcare.

For the foregoing reasons, Amicus TDIndustries respectfully requests that the Court grant Plaintiffs' application for preliminary injunction, enjoining New Rule 190.8 from taking effect

and maintaining the status quo pending the final resolution of the claims brought by Plaintiffs in this action.

Respectfully submitted,

  /s/Rachel L. Noffke         
Thomas A. Nesbitt
  State Bar No. 24007738
tnesbitt@dnaustin.com
Scott F. DeShazo
  State Bar No. 24011414
sdeshazo@dnaustin.com
Rachel L. Noffke
  State Bar No. 24007754
rnoffke@dnaustin.com
DESHAZO & NESBITT, L.L.P.
809 West Avenue
Austin, Texas 78701
(512) 617-5560
(512) 617-5563 Facsimile
**ATTORNEYS FOR AMICUS TDINDUSTRIES**

## CERTIFICATE OF SERVICE

This is to certify that on this 14th day of May, 2015, a true and correct copy of the foregoing instrument was electronically filed by the Court's ECF system, and a true and correct copy was delivered to the individuals listed below.

*/s/ Rachel Noffke*
Rachel Noffke

James Matthew Dow
mdow@jw.com
Dudley McCalla
dmccalla@jw.com
Jackson Walker L.L.P.
100 Congress Avenue, Suite 1100
Austin, Texas 78701
(512) 236-2000 (Telephone)
(512) 236-2002 (Facsimile)

George S. Cary
gcary@cgsh.com
Leah Brannon
lbrannon@cgsh.com
Drew Navikas
dnavikas@cgsh.com
Cleary Gottlieb Steen & Hamilton L.L.P.
2000 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 974-1500 (Telephone)
(202) 974-1999 (Facsimile)

*ATTORNEYS FOR PLAINTIFFS*

James C. Todd
Assistant Attorney General
Office of the Attorney General
General Litigation Division-019
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
 (512)475-4055 (Telephone)
(512) 320-0667  (Facsimile)
jim.todd@texasattorneygeneral.gov

*ATTORNEYS FOR DEFENDANTS*