UNTIED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TELADOC, INC., TELADOC PHYSICIANS, P.A., KYON HOOD, and EMMETTE A. CLARK, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 1:15-cv-00343-RP |
| TEXAS MEDICAL BOARD, MICHAEL ARAMBULA, JULIE K. ATTEBURY, MANUEL G. GUAJARDO, JOHN R. GUERRA, J. SCOTT HOLLIDAY, MARGARET C. MCNEESE, ALLAN N. SHULKIN, ROBERT B. SIMONSON, WYNNE M. SNOOTS, PAULETTE B. SOUTHARD, KARL W. SWANN, SURENDA K. VARMA, STANLEY S. WANG, and GEORGE WILLEFORD III, individually and in their capacities as members of the Texas Medical Board, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | | |

**BRIEF OF *AMICUS CURIAE* NEW BENEFITS, LTD. IN SUPPORT OF PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION BEFORE JUNE 3, 2015; DECLARATION OF JOEL RAY IN SUPPORT THEREOF**

I.    **Texas Faces Challenges Not Just From a Shortage of Physicians, But From a Large Number of Uninsured and Underinsured.**

In discussing the balance of harms and public interests here, Plaintiffs' Application contains a detailed explanation of the harm to Teladoc, Inc. ("Teladoc") and its participating physicians (App. pgs. 20-23.), as well as a description of how New Rule 190.8 will harm the public by increasing prices and reducing access to physician services, a concern exacerbated by the fact that Texas ranks 45th in physicians per capita. (App. pgs. 9-10, 23.)

*Amicus Curiae* New Benefits, Ltd. ("New Benefits") fully concurs with these arguments. But it believes the public harm from New Rule 190.8 is even broader. Texas does not just suffer from a shortage of physicians; it is grappling with a large number of uninsured and underinsured people.

According to the Texas Medical Association ("TMA"), "Texas is the uninsured capital of the United States," with "[m]ore than 6.3 million Texans—including 1.2 million children—lack[ing] health insurance" based on 2011-2012 statistics, or about 1.5 to 2 times the national average.[1] While the Affordable Care Act ("ACA") has reduced these numbers, Texas remains the state with the highest percentage of uninsured and, for the first time, the largest raw number of uninsured.[2]

The uninsured population includes not only the unemployed, but Texans who work in small businesses that do not offer health insurance and many who earn low to moderate incomes. Indeed, according to TMA, "Texas workers are less likely to have employment-based health insurance coverage than those in other states," and "[p]eople making moderate and low wages are much less likely to have job-based health insurance coverage."[3]

It goes without saying that Texans who do not have adequate access to healthcare providers are at increased risk from health-related problems and "are much less likely to receive

---

[1] *See* http://www.texmed.org/uninsured_in_texas/.
[2] *See* https://www.texastribune.org/2015/04/30/study-texas-rate-uninsured-dropped-31-percent/; *see also* http://kxan.com/2014/09/16/texas-no-1-for-uninsured-rate-again.
[3] *Ibid.*

2

needed medical care, even for symptoms that can have serious health consequences if not treated."[4] As discussed below, these risks are compounded by New Rule 190.8, which extinguishes one of the few remaining low-cost options for accessing a physician.

## II. Thousands of Working Texas Families With Moderate and Low Incomes Who Have No or Limited Health Insurance Will Be Harmed If A Preliminary Injunction Is Not Issued.

Many moderate and low income workers who lack adequate access to healthcare services find some relief in discount healthcare programs. Discount healthcare programs are non-insurance membership programs that, for a modest monthly fee (often paid by the employers as a benefit for employees), provide members with access to various healthcare services at discounted prices. (Declaration of Joel Ray ["Ray Decl."], ¶ 4.) Originally, these programs were conceived as a means of defraying the cost of dental, vision and pharmacy products and services. (*Ibid.*) But discount programs eventually grew to include many other healthcare services, including chiropractic, hearing and telemedicine. (*Ibid.*) Today, although the ACA has increased the number of insured Americans, discount programs continue to play a vital role in the healthcare marketplace as there continue to be large numbers of uninsured or underinsured as well as gaps in coverage.

New Benefits is one of the largest providers of discount healthcare programs in the country. (*Id.*, ¶ 5.) More than 35,000 Texas families (totaling approximately 87,500 individuals) are currently enrolled in a New Benefits program that includes a telemedicine benefit administered by plaintiff Teladoc, Inc. (*Ibid.*) Nationally, more than 200,000 families are enrolled in a New Benefits program that includes telemedicine. (*Ibid.*) Most of these members access the program through an employer-sponsored benefit. (*Id.* ¶ 6.) Participating Texas employers include organizations such as Cracker Barrel, Corner Bakery, Red Lobster, Olive

---

[4] *See* http://www.texmed.org/uninsured_in_texas/.

3

Garden, Hutto ISD, Homeaway, First United Bank and Keller Williams. (*Ibid.*) They also include hundreds of small businesses with less than 50 employees. (*Ibid.*)

Telemedicine has been one of the most popular features of New Benefits' programs. Utilization across all groups averages 15-20% annually, making it one of the most widely used benefits. (*Id.*, ¶ 7.) Telemedicine is also one of the most appreciated benefits, with relatively few complaints (the vast majority of which relate to IT issues not quality of care). (*Ibid.*)

In New Benefits' experience, this high utilization and success results from two factors. One is the convenience that telemedicine provides to program members. (*Id.* ¶ 8.) As detailed in Plaintiff's Application, New Benefits members—like other telemedicine customers—enjoy the convenience of speaking directly with physicians on the telephone, without the expense and effort associated with an in-office visit. (App. pg. 9.) And as Plaintiffs correctly point out, this convenience is critical for program members who do not have the flexibility to take time off from work or to arrange childcare in order to visit a doctor. (App. pg. 10.)

The second factor is cost. A Teladoc consultation costs $40. (*See* App. pg. 2.) However, the overwhelming majority of New Benefits members do not pay *any* out-of-pocket money to access the telemedicine service. (Ray Decl., ¶ 8.) Rather, the Teladoc consultation is paid fully by their employer. This again is particularly significant for program members who are either uninsured or do not have the resources to pay for physician office visits.

A debate about whether and how to extend health insurance coverage to the uninsured is well beyond the scope of this case. What is not beyond the scope, however, is whether it is prudent for the State of Texas to deny low and moderate income families—including those who are uninsured, underinsured or who are enrolled in an employer-sponsored discount healthcare program—one of the only low-cost means available to access physicians.

New Rule 190.8 would require a physician to perform an in-person physical examination before treating a patient, regardless of medical necessity. And even when an in-person examination is conducted, the rule only allows a physician to utilize telemedicine to treat a

preexisting condition; other medical conditions occurring after the examination could not be treated through telemedicine.

For the same reasons articulated in Plaintiffs' Application, New Benefits does not believe this rule can withstand legal scrutiny. Although not addressed in Plaintiffs' Application, New Benefits also notes that the new rule is inconsistent with state reimbursement conditions applicable to telemedicine. Texas Insurance Code section 1455.004 prohibits a health benefit plan from denying reimbursement for telemedicine services "solely because the service is not provided through a face-to-face consultation."

If New Rule 190.8 were to withstand legal scrutiny, the impact on thousands of low to moderate income Texans would be significant. According to Plaintiffs, this rule will "end Teladoc's business in Texas." (App. pg. 20.) Given that Teladoc is one of the largest and most influential telehealth services in the United States, it is likely that the rule will likewise force other telemedicine providers to cease offering services in Texas. Without access to a telemedicine provider, New Benefits will have no choice but to remove this benefit from its discount healthcare programs offered in the State of Texas. (Ray Decl., ¶ 9.)

For program members who have health insurance or a means to pay for office visits, this will increase their out-of-pocket costs by removing an efficient means of speaking to a physician on nights and weekends for minor but acute issues. Instead, program members will have only have the more expensive option of in-office, urgent care or emergency room visits.

For members who do not have health insurance or a means to pay for office visits, the impact will be more severe. These members will be left with two bad choices: access physicians through significantly more expensive emergency-room visits or forego necessary care altogether.

It is not difficult to grasp the cascading effects of this scenario. The strain on Texas' already inadequate supply of primary care physicians will increase as more patients seek office visits for relatively minor conditions. Patient outcomes will deteriorate as some who choose to forego care go undiagnosed until their conditions become more severe. And the costs to the state

will increase as more of our state's most vulnerable residents access emergency rooms or wait until their conditions worsen and require more costly care.

In short, the impacts of New Rule 190.8 reach far beyond the business interests of the litigants in this case (or of New Benefits). Thousands of low to moderate income Texans who lack adequate access to healthcare providers rely on telemedicine as a low-cost, efficient means of accessing physicians. These Texans will be forced into choosing unnecessary emergency-room visits or foregoing care if this injunction is not issued. New Benefits believes that this demonstrable public interest—combined with the significant interests of Plaintiffs—weighs strongly in favor of an injunction. We respectfully request that the Court grant the requested TRO and preliminary injunction.

Date:   May 14, 2015

Respectfully submitted,

MAYER BROWN LLP

BY: /s/ Charles S. Kelly
Charles S. Kelly (TX Bar #11199580)
ckelley@mayerbrown.com
MAYER BROWN LLP
700 Louisiana St # 3400
Houston, TX 77002
Telephone:   (713) 238-3000
Facsimile:    (713) 238-4888

Philip Recht (CA Bar #102540)
precht@mayerbrown.com
Andrew T. Kugler (CA Bar #192791)
akugler@mayerbrown.com
MAYER BROWN LLP
350 South Grand Avenue – 25th Floor
Los Angeles, CA 90071-1503
Telephone:  (213) 621-9462
Facsimile:   (213) 576-8126

*Attorneys for New Benefits, Ltd.*

6

AMECURRENT 716231927.1 14-May-15 13:09

## DECLARATION OF JOEL RAY IN SUPPORT OF
## BRIEF OF *AMICUS CURIAE* NEW BENEFITS, LTD.

STATE OF TEXAS )
COUNTY OF DALLAS )

Before me the undersigned notary, on this day personally appeared Joel Ray, a person whose identity is known to me. After I administered an oath to him, upon his oath he stated:

1. My name is Joel Ray. I make this declaration in support of the Brief of *Amicus Curiae* New Benefits, Ltd. ("New Benefits"), in the above-captioned case.

2. I am over the age of eighteen, and I am competent and authorized to make this declaration. The facts set forth in this declaration are based on my personal knowledge, and all such facts are true and correct.

3. New Benefits is a privately-owned Texas-based limited partnership with headquarters in Dallas, Texas, that offers over 30 medical and lifestyle products to associations, insurance companies, banks, credit unions, brokerage/consulting firms, insurance agencies, third party payors (TPAs) and employers throughout the United States. I am the Chief Executive Officer of New Benefits, and have been involved in the discount healthcare industry for over 24 years.

4. The primary products offered by New Benefits are discount healthcare programs. Discount healthcare programs are non-insurance membership programs that, for a modest monthly fee, provide members with access to various healthcare services at discounted prices. Originally, these programs were conceived as a means of defraying the cost of dental, vision and pharmacy products and services. But discount programs eventually grew to include many other healthcare services, including chiropractic, hearing and telemedicine.

5. New Benefits is one of the largest providers of discount healthcare programs in the country. More than 35,000 Texas families (totaling approximately 87,500 individuals) are currently enrolled in a New Benefits program that includes a telemedicine benefit administered

by Teladoc, Inc. Nationally, more than 200,000 families are enrolled in a New Benefits program that includes telemedicine.

6. Most members in Texas access a New Benefits program through an employer-sponsored benefit. Participating employers in Texas include organizations such as Cracker Barrel, Corner Bakery, Red Lobster, Olive Garden, Hutto ISD, Homeaway, First United Bank and Keller Williams. They also include hundreds of small businesses with less than 50 employees.

7. Utilization of telemedicine across all groups averages 15-20% annually, making it one of the most widely used benefits. Telemedicine is also one of the most appreciated benefits, with relatively few complaints (the vast majority of which relate to IT issues not quality of care).

8. In our experience, this high utilization and success results from two factors. One is the convenience that telemedicine provides to our members. The second is cost. Although a Teladoc consultation costs $40, the overwhelming majority of New Benefits members do not pay *any* out-of-pocket money to access the telemedicine service. Rather, the Teladoc consultation is paid fully by their employer.

9. Without access to a telemedicine provider, New Benefits will have no choice but to remove this benefit from its discount healthcare programs offered in the State of Texas.

Further Affiant Sayeth Not.



JENNIE PATTERSON OZMUN
Notary Public, State of Texas
My Commission Expires
August 05, 2015

_____
Joel Ray

Sworn to and subscribed before me by ___Joel Ray___ on \4 day of May, 2015.

_____
Notary Public in and For the State of Texas

8