IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| TELADOC, INC., ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| V. | § | 1-15-CV-343  RP |
| | § | |
| TEXAS MEDICAL BOARD, ET AL., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are Defendants' Amended Motion to Dismiss, filed July 30, 2015 (Clerk's Dkt. #64) and the responsive pleadings thereto.  After reviewing the pleadings, relevant case law, as well as the entire case file, the Court issues the following order.

## I.  BACKGROUND

Plaintiffs Teladoc, Inc. and Teladoc Physicians, P.A. (jointly "Teladoc"), Kyon Hood, M.D. ("Dr. Hood"), and Emmette Clark, M.D. ("Dr. Clark") bring this action against fourteen members of the Texas Medical Board ("TMB") in their official capacities[1] challenging recent regulatory changes adopted by the TMB.

The TMB is a state agency "statutorily empowered to regulate the practice of medicine in Texas."  22 TEX. ADMIN. CODE § 161.1.  *See also* TEX. OCC. CODE ANN. § 152.001 (TMB has "the power to regulate the practice of medicine," noting TMB replaces former Texas State Board of Medical Examiners).  Teladoc describes itself as providing "telehealth services," utilizing telecommunication technologies to provide health care services outside the traditional models wherein medical professionals provides services in an in-person office or hospital setting.

---

[1] Plaintiffs originally named the TMB and fourteen of its members in both their individual and official capacities. The parties thereafter stipulated to the dismissal of the TMB and its members in their individual capacities, based on the parties' agreement that full relief could be obtained against the TMB's members in their official capacities.  For convenience's sake, the Court refers herein to the members of the TMB collectively as "the TMB."

According to Plaintiffs, "[t]elehealth providers are generally available 24 hours per day, 365 days per year, for a fraction of the cost of a visit to a physician's office, urgent care center, or hospital emergency room."  (Am. Compl. ¶ 2).

Teladoc's services are typically available to individuals whose employer has contracted with Teladoc for a per-member subscription fee.  Individuals register with Teladoc either by telephone or online, creating a personal account, including information such as a medical history, physician, contact information, and medical records.  Registrants may also upload photographs and medical records to Teladoc's system for inclusion with their medical history.  (*Id*. ¶¶ 44-45).

Registrants seeking a physician consultation can log into Teladoc's web portal or call a toll-free number to place a request for consultation.  Teladoc employs board certified physicians who are provided specialized training in treatment and diagnosis via telephone.   Once a Teladoc physician accepts the request for consultation, the physician reviews the requesting registrant's information and medical records through the website, then calls the registrant by telephone and consults with him or her.  Based on the medical records and history, reported symptoms, and other information the physician elicits during the consultation, the physician dispenses medical advice, including referring the registrant to a physician's office, dentist, or emergency room.   When deemed appropriate, the physician can prescribe certain medications.[2] Following the consultation, the Teladoc physician enters notes and findings into the registrant's record, which is available to the registrant and, if the registrant chooses, is forwarded to his or her primary-care physician.  (*Id*. ¶¶ 46, 69-71, 77-85).

This action relates to the TMB's adoption of revisions to Chapters 174 and 190 of the Texas Administrative Code title which governs the TMB.   Chapter 174 regulates the practice of telemedicine medical services in Texas.  22 TEX. ADMIN. CODE § 174.1.  Chapter 190 sets forth

---

[2] According to Teladoc, its physicians do not prescribe "DEA-controlled substances (including narcotics) or what are referred to as lifestyle drugs (i.e., Viagra, or diet pills)."  (Am. Compl. ¶ 82).

disciplinary guidelines for the practice of medicine in Texas.  22 TEX. ADMIN. CODE § 190.1.

 As originally adopted by the TMB in 2003, section 190.8(1)(L) ("Old Rule 190.8") prohibits prescription of any "dangerous drug or controlled substance" without first establishing a "proper professional relationship" which requires, in pertinent part, "establishing a diagnosis through the use of acceptable medical practices *such as* patient history, mental status examination, physical examination, and appropriate diagnostic and laboratory testing."   22 TEX. ADMIN. CODE § 190.8(1)(L) (emphasis added).   In 2004 the TMB adopted regulations specifically governing "telemedicine."  22 TEX. ADMIN. CODE §§ 174.1, *et seq*.

Effective October 2010, the TMB amended its telemedicine regulations, restricting the definition of "telemedicine" to consultations using "advanced telecommunications technology that allows the distant site provider to see and hear the patient in real time."  *Id*. § 174.2.  The amended regulations also made clear that, to establish a "proper physician-patient relationship," telemedicine providers were required to conduct a physical examination of a patient.  *Id*. § 174.8 ("New Rule 174").  In response to the amended regulations, Teladoc restricted the services it offered in Texas, specifically eliminating the option of video consultation.  (Am. Compl. ¶¶ 100-02).

In June 2011, the TMB issued a letter to Teladoc, stating the language of Old Rule 190.8 required a "face-to-face" examination prior to prescription of a dangerous drug or controlled substance.  Plaintiffs allege the letter was prompted by complaints from Texas physicians about competition from Teladoc.  (*Id*. ¶¶ 104-05).

Teladoc sought legal recourse by bringing suit against the TMB in Texas state court.  (*Id*. ¶ 106).  In July 2011 the state court issued a temporary restraining order barring enforcement of the TMB's interpretation of Old Rule 190.8.  (*Id*. ¶ 107).  In December 2014 the court of appeals held the "TMB's pronouncements in its June 2011 letter are tantamount to amendments to the existing text," finding the TMB had effectively substituted "including" for the actual "such as" phrase.  *Teladoc, Inc. v. Texas Med. Bd.*, 453 S.W.3d 606, 620 (Tex. App.–Austin 2014, pet. filed).  Thus,

3

the court found the "TMB's pronouncements hardly 'track' [Old] Rule 190.8 . . . rather, they depart from and effectively change that text," rendering the June 2011 letter a procedurally invalid amendment to Old Rule 190.8.  *Id*.

In response, the TMB issued an "emergency" rule on January 16, 2015, amending Old Rule 190.8.  The emergency amendment mandated a "face-to-face visit or in-person evaluation" before a physician can issue a prescription.  (Am. Compl. ¶ 111).  Teladoc sought and obtained a temporary injunction of the emergency rule in Texas state court.  (*Id*. ¶¶ 113-14).  The TMB then engaged in a formal rulemaking, resulting in an April 10, 2015 vote by the TMB to adopt section 190.8(1)(L) ("New Rule 190.8") which sets forth practices the TMB deems to be violations of the Texas Medical Practices Act.  According to the TMB, that new rule would require a face-to-face visit before a physician can issue a prescription to a patient, regardless of medical necessity.  (*Id*. ¶ 115).

Plaintiffs filed this action on April 29, 2015, asserting Defendants have committed a violation of antitrust law, as well as the Commerce Clause of the Constitution in adopting New Rule 190.8 and New Rule 174.  The TMB seeks to dismiss Plaintiffs' claims, arguing they are barred by the statute of limitations, the TMB is immune from antitrust liability, and Plaintiffs have failed to state an actionable claim under the Commerce Clause.  The parties have filed responsive pleadings and the motion is now ripe for review.

## II.  STANDARD OF REVIEW

A federal court must dismiss an action "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction."  FED. R. CIV. P. 12(h)(3).  Thus, lack of subject-matter jurisdiction may be raised at any time by any party, or by the court sua sponte.  *Bank One Texas v. United States,* 157 F.3d 397, 403 (5th Cir. 1998); *MCG, Inc. v. Great Western Energy Corp.,* 896 F.2d 170, 173 (5th Cir. 1990).  However, the plaintiff bears the burden of establishing federal

jurisdiction.  *Burge v. Parish of St. Tammany,* 187 F.3d 452, 465-66 (5th Cir. 1999).  *See also Coury v. Prot,* 85 F.3d 244, 248 (5th Cir. 1996) (presumption against subject matter jurisdiction must be rebutted by party bringing action to federal court).  A motion to dismiss for lack of subject matter jurisdiction must be considered before any other challenge.  *See Steel Co. v. Citizens for Better Environment,* 523 U.S. 83, 94-95 (1998) ("The requirement that jurisdiction be established as a threshold matter ... is inflexible and without exception"); *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (court must find jurisdiction before determining validity of claim).  On a Rule 12(b)(1) motion, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *MDPhysicians & Assocs., Inc. v. State Board of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992).

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true.  *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996).  Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement."  *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id.* at 570.  The court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief.  If not, "the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting FED. R. CIV. P. 8(a)(2)).

5

## III.  ANALYSIS

Defendants contend the claims asserted by Plaintiffs attacking New Rule 174 should be dismissed as barred by limitations.  Defendants also maintain Plaintiffs' claim of an antitrust violation is barred by the doctrine of state action immunity.  Finally, Defendants argue Plaintiffs have failed to state a claim under the Commerce Clause.

### A.      Statute of Limitations

Suits asserting antitrust violations under the Clayton Act are generally subject to a four year statute of limitations.  15 U.S.C. § 15b (action to enforce Clayton Act "shall be forever barred unless commenced within four years after the cause of action accrued").  The limitations period for a claim asserted under 42 U.S.C. § 1983 ("Section 1983") is determined by the state's personal injury limitations period.  *Whitt v. Stephens Cnty.*, 529 F.3d 278, 282 (5th Cir. 2008); *Price v. City of San Antonio*, 431 F.3d 890, 892 (5th Cir. 2005).  In Texas it is two years.  TEX. CIV. PRAC. & REM. CODE ANN. § 16.003.  The parties agree New Rule 174 took effect on October 17, 2010.  Plaintiffs did not file this action until April 29, 2015, more than four years later.  The TMB maintains each of Plaintiffs' claims attacking New Rule 174 are thus time barred.

As an initial matter, Plaintiffs point out that the TMB's assertion of limitations fails to account for all of the Plaintiffs.  Specifically, they note that Dr. Hood first became licensed to practice medicine in 2014 and Dr. Clark did not begin practicing telemedicine through Teladoc until 2013.  Plaintiffs correctly maintain neither would have had standing prior to beginning the practice of telemedicine to assert any injury from New Rule 174.  *See Price v. City of San Antonio*, 431 F.3d 890, 893 (5th Cir. 2005) (cause of action under section 1983 accrues when plaintiff "knows or has reason to know of the injury which is the basis of the action."); *Bourns, Inc. v. Raychem Corp.*, 331 F.3d 704, 711 (9th Cir. 2003) ("Only an actual competitor or one ready to be a competitor can suffer antitrust injury.").

6

The TMB suggests these facts are of no moment, arguing "[b]y plaintiffs' reasoning, a corporation can perpetually evade both limitations and laches by continuing to recruit new employees or contractors."  (Def. Reply at 31).[3]  But this argument merely buttresses Plaintiffs' point, that the TMB has focused only on Teladoc's claims, not those of the individual doctor plaintiffs.  At a minimum, the TMB has failed to show limitations bars their claims.

Plaintiffs also argue the continuing violation doctrine acts to forestall the TMB's limitations argument.  "Generally, a cause of action accrues and the statute begins to run when a defendant commits an act that injures a plaintiff's business."  *Rx.com v. Medco Health Sols., Inc.*, 322 F. App'x 394, 396 (5th Cir. 2009) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971)) ("[I]f a plaintiff feels the adverse impact of an antitrust conspiracy on a particular date, a cause of action immediately accrues").  When a plaintiff alleges a continuous antitrust violation, suit may be brought within four years after the defendant "commits an additional overt act in furtherance of the antitrust conspiracy or commits an act that by its very nature is a continuing antitrust violation."  *Kaiser Alum. & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1051 (5th Cir. 1982),  Similarly, in a claim asserted under Section 1983, the continuing violation theory can relieve a plaintiff of showing that all of the defendant's conduct occurred within the limitations period, but only if the plaintiff can show "a series of related acts, one or more of which falls within the limitations period."  *Montgomery v. La. ex rel. La. Dep't of Pub. Safety & Corr.*, 46 F. App'x 732 (5th Cir. 2002) (quoting *Messer v. Meno*, 130 F.3d 130, 134-135 (5th Cir. 1997)).

Plaintiffs point to their allegations of actions taken by Defendants between the adoption of New Rule 174 and the filing of this action as evidencing a continuing violation by Defendants.  Specifically, Plaintiff allege the TMB's General Counsel sent a letter in June 2011 to Teladoc

---

[3]  The TMB further suggests prior lack of standing is insufficient to prevent the application of limitations.  No authority is cited for that proposition, however.  Moreover, Dr. Hood lacked standing to attack the rules governing the practice of medicine in Texas prior to his licensure because he had not suffered any injury prior to that date.  The TMB provides no explanation as to how his ability to seek relief for his alleged injury could have expired prior to his suffering the injury.

asserting a new interpretation of Old Rule 190.8, a letter which Plaintiffs assert was prompted by complaints from Texas doctors concerning competition from Teladoc.  (Am. Compl. ¶¶ 104-05).  Plaintiffs further allege the TMB thereafter sent letters to several of Teladoc's clients stating Teladoc was in violation of Old Rule 190.8, despite the stay of that interpretation issued in July 2011 by the Texas state court.  (*Id*. ¶ 109).  In addition, Plaintiffs allege Defendants adopted an invalid "emergency" amendment to Old Rule 190.8 in January 2015, before finally adopting New Rule 190.8 in April 2015.  (*Id*. ¶¶ 111-19).

The TMB maintains the allegations do nothing more than suggest Plaintiffs suffered continuing effects from the adoption of New Rule 174.  In an antitrust case, "[f]or statute of limitations purposes, . . . the focus is on the timing of the causes of injury, i.e., the defendant's overt acts, as opposed to the effects of the overt acts."  *Varner v. Peterson Farms*, 371 F.3d 1011, 1019 (8th Cir. 2004) (quoting *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 467 (6th Cir.1996)).  Nor can a plaintiff use the continuing violation theory to resurrect claims alleging a civil rights violation "concluded in the past, even though its effects persist."  *McGregor v. La. State Univ. Bd. of Supervisors*, 3 F.3d 850, 867 (5th Cir. 1993).

Plaintiffs, in contrast, characterize their allegations as a setting forth a continuous course of conduct by the TMB, aimed at interfering with Plaintiffs' ability to engage in telemedicine.  The Court agrees this view more correctly describes Plaintiffs' claims here.  This conclusion is supported by the fact that, according to Plaintiffs, the TMB began its course of conduct prior to adopting New Rule 174 by attempting to enforce a new reading of Old Rule 190.8, and when that attempt failed, continued its course of conduct by adopting the new rule.

Moreover, as the TMB admits, the question of limitations is not purely a matter of statutory proscription when solely equitable relief is sought.  Rather, in such cases, courts apply the doctrine of laches, instead of the analogous limitations period.  *Kaiser Alum.*, 677 F.2d at 1057.  *See Oliver v. SD-3C LLC*, 751 F.3d 1081, 1084 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 1733 (2015) ("Because

Plaintiffs seek only injunctive relief under federal law, their federal antitrust claim is subject to the equitable doctrine of laches and not the four-year statute of limitations in . . . the Clayton Act"). To establish that a cause of action is barred by laches, the defendant must show: (1) a delay in asserting the right or claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the defendant. *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 344 (5th Cir. 2005). However, if the claim is brought outside the analogous limitations period, "the bare fact of delay creates a rebuttable presumption of prejudice" to the defendant. *Kaiser Alum.*. 677 F2d at 1057 (citing *Int'l Tel. & Tel. Corp. v. Gen'l Tel. & Elec. Corp.*, 518 F.2d 913, 926 (9th Cir. 1975)).

The TMB contends the presumed prejudice from Plaintiffs' delay is sufficient to justify the invocation of laches to bar their claims.  Plaintiffs point out, however, that the Fifth Circuit has stated "[t]he concept of undue prejudice, an essential element in a defense of  laches, is normally inapplicable when the relief is prospective." *Envtl. Defense Fund v. Marsh*, 651 F.2d 983, 1005 n.32 (5th Cir. 1981). *See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 959-60 (9th Cir. 2001) ("almost by definition, the plaintiff's past dilatoriness is unrelated to a defendant's ongoing behavior that threatens future harm"); *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 799 (4th Cir. 2001) ("A prospective injunction is entered only on the basis of current, ongoing conduct that threatens future harm. Inherently, such conduct cannot be so remote in time as to justify the application of the doctrine of laches.").  In addition, Plaintiffs suggest it would not disserve the public interest to permit their attack to proceed.  This suggestion is supported by the fact that in seeking, and obtaining, a preliminary injunction, Plaintiffs presented evidence that consumers will face higher prices for medical care, as well as reduced access as a result of the TMB's restrictions on telemedicine.  The TMB provides no rebuttal to these arguments.  Accordingly, the Court concludes application of laches is not justified on the facts of this case at this point.  The TMB's motion to dismiss on the basis of limitations is, therefore, properly denied.

9

B.     **State Action Immunity**[4]

The TMB next contends Plaintiffs' antitrust claim is barred by the doctrine of state action immunity.  States are generally permitted to regulate their economies in ways they see fit, including "impos[ing] restrictions on occupations, confer[ring] exclusive or shared rights to dominate a market, or otherwise limit[ing] competition to achieve public objectives."  *N. Carolina State Bd. of Dental Examiners v. F.T.C.*, 135 S. Ct. 1101, 1109 (2015).  Thus, in most situations "federal antitrust laws are subject to supersession by state regulatory programs."  *F.T.C. v. Ticor Title Ins. Co.*, 504 U.S. 621, 632 (1992).  As a result, the Supreme Court has "interpreted the antitrust laws to confer immunity on anticompetitive conduct by the States when acting in their sovereign capacity."  *Id*. at 1110 (citing *Parker v. Brown*, 317 U.S. 307, 350–51 (1942)).  However, the Supreme Court has also made clear that so-called "*Parker* immunity" is afforded only if two requirements are satisfied: "first that 'the challenged restraint . . . be one clearly articulated and affirmatively expressed as state policy,' and second that 'the policy . . . be actively supervised by the State.'"  *FTC v. Phoebe Putney Health Sys., Inc.*, 568 U.S. __, __, 133 S. Ct. 1003, 1010 (2013) (quoting *California Retail Liquor Dealers Assn. v. Midcal Alum., Inc*., 445 U.S. 97, 105 (1980)).  The Supreme Court has further cautioned that "given the fundamental national values of free enterprise and economic competition that are embodied in the federal antitrust laws, 'state-action immunity is disfavored.'"  *Phoebe Putney*, 133 S. Ct. at 1010 (quoting *Ticor Title*, 504 U.S. at 636).

1.  **Burden of Proof**

As an initial matter, the parties disagree concerning which of them bears the burden of establishing the applicability of state action immunity.  The TMB argues the doctrine is jurisdictional.  The TMB thus maintains Plaintiffs bear the burden to establish the immunity does not deprive this

---

[4]  In opposing Plaintiffs' application for a preliminary injunction the TMB declined to assert any immunity defenses.  Accordingly this issue is addressed for the first time herein.

Court of jurisdiction.  Plaintiffs contend the doctrine is an affirmative defense, therefore the TMB bears the burden to show its applicability.

Clearly, the doctrine enunciated in *Parker* is considered one of immunity.  *See N. Carolina State Bd.*, 135 S. Ct. 1101 (repeatedly referring to "*Parker* immunity"); *Acoustic Sys., Inc. v. Wenger Corp.*, 207 F.3d 287, 293 (5th Cir. 2000) (referring to state action doctrine as "immunity from suit").  *But see Surgical Care Center of Hammond, L.C. v. Hospital Serv. Dist. No. 1 of Tangipahoa Parish*, 171 F.3d 231, 234 (5th Cir. 1999) (en banc) (noting "*Parker* immunity" is "inapt description" as it is "more accurately a strict standard for locating the reach of the Sherman Act"). Merely labeling a doctrine one of immunity, however, does not necessarily render it a matter of jurisdiction.  For example, qualified immunity, while conferring immunity from suit, is an affirmative defense which must be established by the defendant.  *See Crawford-El v. Britton*, 523 U.S. 574, 586 (1998) (qualified immunity is affirmative defense and burden of pleading it rests with the defendant); *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009) ("As an affirmative defense, qualified immunity must be pled and proved by the defendant.").  More to the point, in application state action immunity has been treated as a defense to be proved by the purported state actor.  *See, e.g., Ticor Title*, 504 U.S. at 625 (state action immunity was "[o]ne of the principal defenses" asserted); *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 38–39 (1985) ("municipalities must demonstrate" that their actions were taken pursuant to state policy to obtain immunity); *Patrick v. Burget*, 486 U.S. 94, 101 (1988) (concluding respondents had not succeeded in showing active supervision required to result in state action immunity); *Acoustic Sys.*, 207 F.3d at 294 (state action immunity "provides only a defense against liability"); *Yeager's Fuel, Inc. v. Pa. Power & Light Co.*, 22 F.3d 1260, 1266 (3d Cir. 1994) ("Cases since *Parker*, however, clarify that state action immunity is an affirmative defense as to which [defendant] bears the burden of proof"); *Nugget Hydroelectric, L.P. v. Pacific Gas & Elec. Co.*, 981 F.2d 429, 434 (9th Cir. 1992) (party claiming immunity must demonstrate that its conduct satisfies requirements of state action

11

immunity).  Accordingly, the Court concludes the TMB bears the burden of showing it is entitled to the protection of state action immunity.

### 2. Supervision

The parties agree that a showing of active state supervision is required to obtain the protection of the state action doctrine.  They disagree as to whether such supervision exists over the TMB.

An important backdrop to the case is the Supreme Court's most recent decision concerning state action immunity.  At issue in that case was whether the North Carolina State Board of Dental Examiners ("the Board") was entitled to the protection of the doctrine.  As in this case, the Board was largely composed of market participants.  The Board argued its members were invested by North Carolina with the power of the State and thus, the Board's actions were protected by state action immunity.  The Supreme Court rejected that argument, and made clear that a "nonsovereign actor controlled by active market participants—such as the Board—enjoys *Parker* immunity *only if*" it was subject to active state supervision and the challenged restraint was an expression of state policy.  *N. Carolina State Bd.*, 135 S. Ct. at 1110 (emphasis added).  While the Supreme Court did not need to decide whether state supervision existed because the Board made no claim that it was actively supervised, the Court did address the issue, stating:

> It suffices to note that the inquiry regarding active supervision is flexible and context-dependent.  Active supervision need not entail day-to-day involvement in an agency's operations or micromanagement of its every decision.  Rather, the question is whether the State's review mechanisms provide "realistic assurance" that a nonsovereign actor's anticompetitive conduct "promotes state policy, rather than merely the party's individual interests."
>
> The Court has identified only a few constant requirements of active supervision: The supervisor must review the substance of the anticompetitive decision, not merely the procedures followed to produce it; the supervisor must have the power to veto or modify particular decisions to ensure they accord with state policy; and the "mere potential for state supervision is not an adequate substitute for a decision by the State."  Further, the state supervisor may not itself be an active market participant.  In general, however, the adequacy of supervision otherwise will depend on all the

circumstances of a case.

*N. Carolina State Bd.*, 135 S. Ct. at 1116-17 (internal citations omitted).  In this case, the TMB argues it is subject to active state supervision because its decisions are subject to judicial review by the courts of Texas and the State Office of Administrative Hearings ("SOAH"), as well as review by the Texas Legislature.

As to the first, Texas law permits a party adversely affected by an agency rule to challenge "the validity or applicability of the rule" by filing a challenge in a Travis County district court.  TEX. GOV'T CODE ANN. § 2001.038.  That review, however, is limited to inquiring whether the decision exceeded the statutory authority granted to the agency.  *See Harlingen Family Dentistry, P.C. v. Tex. Health & Human Servs. Comm'n*, 452 S.W.3d 479, 481-82 (Tex. App.–Austin 2014, pet. dism'd) ("An agency's rules must comport with the agency's authorizing statute"); *Tex. Orthopaedic Ass'n v. Tex. State Bd. of Podiatric Med. Exam'rs*, 254 S.W.3d 714, 719-20 (Tex. App.–Austin 2008, pet. denied) ("when determining whether an agency's rule is valid, we must ascertain whether the rule is contrary to the relevant governing statutes, or whether the rule is in harmony with the general objectives of the statutes involved") (citations omitted).  *See also Patel v. Tex. Dep't of Licensing & Regulation*, 469 S.W.3d 69, 80 (Tex. 2015) (plaintiffs "cannot attack the constitutionality of the statutes pursuant to Section 2001.038 of the APA").

The TMB maintains the review effectively permits an evaluation of whether a contested rule is consistent with state policy because state laws are the embodiment of state policy.  But courts have made clear the review of the validity of a rule does not permit evaluation of the policy underlying the rule.  *See Office of Pub. Util. Counsel v. Pub. Util. Comm'n of Tex.*, 104 S.W.3d 225, 234 (Tex. App.–Austin 2003, no pet.) (noting court's role "in assessing a rule's validity is to carry forward statutory directives, rather than weigh the wisdom of a particular policy"); *Gulf Coast Coal. of Cities v. Pub. Util. Comm'n*, 161 S.W.3d 706, 712 (Tex. App.–Austin 2005, no pet.) ("This Court does not decide matters of policy; we are limited to evaluating whether the Commission acted

contrary to the statute"). In contrast, the Supreme Court has made clear that to qualify as active supervision "the supervisor must have the power to veto or modify particular decisions to ensure they accord with state policy." *N. Carolina State Bd.*, 135 S. Ct. at 1116. And the TMB has not pointed to any example of judicial review which rejected the validity of a rule on the ground it did not "accord with state policy." In addition, the judicial review on which the TMB relies merely permits a court to determine a rule is invalid. It does not, therefore, meet the Supreme Court's mandate that "the supervisor must have the power to veto or *modify* particular decisions to ensure they accord with state policy. *Id*. (emphasis added).

The TMB also, in a footnote, suggests judicial review under two other sections of the Texas Government Code codifying Texas' version of the Administrative Procedures Act ("APA") is sufficient to constitute active supervision. Under those sections, an agency rule is "voidable" if it fails to comply with the procedural requirements of the APA, including failure to include a "reasoned justification for the rule as adopted" which "demonstrates in a relatively clear and logical fashion that the rule is a reasonable means to a legitimate objective." Tex. Gov't Code Ann. §§ 2001.033 & 2001.035. But the Supreme Court has made clear that the "supervisor must review the substance of the anticompetitive decision, not merely the procedures followed to produce it." *N. Carolina State Bd.*, 135 S. Ct. at 1116. *See Patrick*, 486 U.S. at 104 (finding judicial review, if it existed, was limited to whether reasonable procedure afforded and plaintiff doctor's conduct posed threat to patient safety and thus did not satisfy active supervision). And the reasoned justification requirement, as the TMB itself points out, amounts to little more than a certification that "the rule, as adopted, has been reviewed by legal counsel and found to be a valid exercise of the agency's legal authority." Tex. Gov't Code Ann. § 2001.033. This adds little to the review under section 2001.038 which the Court has found insufficient to constitute active supervision.

The TMB further maintains it is subject to active supervision because the disciplinary actions it takes are subject to judicial review. Texas law grants the TMB the authority to issue a cease and

14

desist order prohibiting a person from engaging in an activity the TMB believes violates a rule adopted by the TMB.  TEX. OCC. CODE ANN. § 165.052(a).  "If after the issuance of a cease and desist order the individual wishes to appeal the entry of the order, the individual may file a petition" in state district court.  22 TEX. ADMIN. CODE § 187.83(f).  Further, "[a] person whose license to practice medicine has been revoked or who is subject to other disciplinary action by the board may appeal to a Travis County district court."  TEX. OCC. CODE ANN. § 164.009.

Both appeals are governed by section 2001.174 of the Texas Government Code.  *See Brooks v. Texas Med. Bd.*, 2015 WL 3827327, at *2 (Tex. App.–Austin June 18, 2015, no pet.) (review of cease and desist hearing conducted by TMB); *Rodriguez-Aguero v. Texas Med. Bd.*, 2010 WL 1730023, at *3 (Tex. App.–Austin Apr. 30, 2010, no pet.) (review of order revoking license to practice).  Under that provision, the court

> shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
> (A) in violation of a constitutional or statutory provision;
> (B) in excess of the agency's statutory authority;
> (C) made through unlawful procedure;
> (D) affected by other error of law;
> (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or
> (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

TEX. GOV'T CODE ANN. § 2001.174.  As with the other provisions cited above, the review available under this section is limited, and fails to confer on the reviewing court a method for looking to whether the decision of the TMB is "in accord with state policy."  Nor is the reviewing court permitted to modify any decision, but rather is limited to reversing or remanding the TMB's decision.  *See R.R. Comm'n of Tex. v. Torch Operating Co.*, 912 S.W.2d 790, 792 (Tex. 1995) (review under section 2001.174 "is a limited standard of review that gives significant deference to the agency" and "does not allow a court to substitute its judgment for that of the agency").  Significantly, the TMB does not cite to any case supporting its view that this type of review constitutes active supervision,

while Plaintiffs cite to a string of cases concluding the opposite. *See, e.g., Patrick*, 486 U.S. at 104-05 (review limited to determining if board followed reasonable procedure and sufficient evidence existed to find terminated physician's conduct threatened patients "falls short of satisfying the active supervision requirement"); *Pinhas v. Summit Health, Ltd.*, 894 F.2d 1024, 1030 (9th Cir. 1989) (judicial review evaluating "if the decision was substantively rational, lawful, not contrary to established public policy and the proceedings were fair" under which "court may not substitute a judgment for that of the governing board even if it disagrees with the board's decision" not active supervision); *Shahawy v. Harrison*, 875 F.2d 1529, 1535-36 (11th Cir. 1989) (where "courts merely review the board's decisions for procedural error and insufficient evidence" state did not actively supervise board).

Finally, the TMB argues the Texas Legislature exercises sufficient oversight to constitute active supervision. According to the TMB, the oversight consists of the "sunset review" process and a provision requiring the legislature to be notified of proposed rule changes.

As to the first, under sunset review, a state agency is evaluated to "determin[e] whether a public need exists for the continuation of a state agency" and the legislature thereafter simply votes whether to "continue the agency." TEX. GOV'T CODE ANN. §§ 325.011 & 325.015. Plaintiffs point out the last sunset review conducted of the TMB was in 2005. The rules challenged in this lawsuit were adopted well after that review, and the next review will not be conducted until 2017. Further, the TMB itself admits that the Sunset Commission does not have the power to veto or modify any rule adopted by the TMB.

As to the second, Texas law requires that every proposed state agency rule be referred by the presiding officer of each house "to the appropriate standing committee for review before the rule is adopted." TEX. GOV'T CODE ANN. § 2001.032(a). The standing committee is authorized simply to "send to a state agency a statement supporting or opposing adoption of a proposed rule." TEX. GOV'T CODE ANN. § 2001.032(c). Clearly absent is any authority to veto or modify the rule.

Plaintiffs maintain, even in combination, this purported legislative review thus falls well short of the active supervision required.

The TMB suggests Plaintiffs have mischaracterized the relevant inquiry. The TMB contends legislative review need only put in place a system that provides "realistic assurance" that state regulators overseeing a profession to which they belong will promote state policy rather than their private professional interests. But the Supreme Court has made abundantly clear that the "mere presence of some state involvement or monitoring does not suffice." *Patrick*, 486 U.S. at 101. Rather, active supervision

> requires that state officials have and exercise power to review particular anticompetitive acts of private parties and disapprove those that fail to accord with state policy. Absent such a program of supervision, there is no realistic assurance that a private party's anticompetitive conduct promotes state policy, rather than merely the party's individual interests.

*Id*. *See also 324 Liquor Corp. v. Duffy*, 479 U.S. 335, 345, n.7 (1987) (periodic reexamination by state legislature of proposals to alter liquor pricing system did not constitute active supervision because it failed to "exert[] any significant control over" terms of restraint). Accordingly, the Court finds the TMB has failed to show the active supervision required to merit dismissal on the basis of state action immunity.

### 3. Clear Articulation

Plaintiffs also contend the TMB is not entitled to claim state action immunity because it has failed to show the challenged rules were enacted pursuant to a clearly articulated state policy. To satisfy the clear-articulation test, the "anticompetitive effect" in dispute should be the "foreseeable result of what the State authorized." *United Nat'l Maint., Inc. v. San Diego Convention Ctr., Inc*., 766 F.3d 1002, 1010 (9th Cir. 2014) *cert. denied*, 135 S. Ct. 980 (2015). The statutory authority need not "explicitly permit[] the displacement of competition," rather, it is enough, "if suppression of competition is the 'foreseeable result' of what the statute authorizes." *City of Columbia v. Omni*

*Outdoor Advert., Inc.*, 499 U.S. 365, 372-73 (1991).

As the Court has concluded the TMB has failed to show its adoption of the challenged rules is subject to active state supervision, this second requirement of state action immunity need not be addressed.

## C.     Dormant Commerce Clause

Plaintiffs maintain both New Rule 174 and New Rule 190.8 violate the Commerce Clause because they discriminate against physicians who are licensed in Texas, but are physically located out of state.  The "negative" or so-called "dormant" aspect of the Commerce Clause prohibits "economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors."  *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337-38 (2008).  The Supreme Court has made clear "[t]ime and again," that state laws violate the Commerce Clause if they mandate "differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter."  *Granholm v. Heald*, 544 U.S. 460, 472 (2005) (quoting *Oregon Waste Sys., Inc. v. Dep't of Envt'l Quality*, 511 U.S. 93, 99 (1994)).

The TMB argues Plaintiffs' Commerce Clause claim fails for several reasons.  First, they suggest such a claim is not cognizable under Section 1983.  However, the Supreme Court rejected that argument more than twenty years ago, clearly holding a claim based on the Commerce Clause could be brought under Section 1983.  *Dennis v. Higgins*, 498 U.S. 439, 451 (1991).  *See Adar v. Smith*, 639 F.3d 146, 161 n.9 (5th Cir. 2011) (noting in *Dennis v. Higgins*, "the Court held that violations of the commerce clause may be redressed by § 1983.").

The TMB also suggests Plaintiffs' Commerce Clause claim should be dismissed because it is contrary to their claim of an antitrust violation.  The TMB points out that Plaintiffs' antitrust claim rests on their ability to show the TMB was not subject to active state supervision, but their Commerce Clause claim requires a showing that the TMB is a state actor.  According to the TMB,

those two arguments are irreconcilable.

The Court disagrees.  In pertinent part, Texas law provides that "[t]he Texas Medical Board is an agency of the executive branch of state government with the power to regulate the practice of medicine." TEX. OCC. CODE ANN. § 152.001(a).  This statement clearly indicates the TMB acts on behalf of the state.  Plaintiffs correctly point out that the question of immunity from antitrust liability rests on a different determination.  That is, whether the TMB is subject to active state supervision in its decisions which have an anti-competitive effect.  In contrast, liability under Section 1983 requires only a showing that the TMB is a state actor.  Accordingly, Plaintiffs' Commerce Clause claim need not be dismissed on this basis.[5]

Finally, the TMB maintains Plaintiffs cannot establish more than "an indirect burden on interstate commerce" which does not violate the Commerce Clause.  *Dickerson v. Bailey*, 336 F.3d 388, 396 (5th Cir. 2003).  The Fifth Circuit has explained:

> A statute violates the dormant Commerce Clause where it discriminates against interstate commerce either facially, by purpose, or by effect. If the statute impermissibly discriminates, then it is valid only if the state "can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest." If the statute does not discriminate, then the statute is valid unless the burden imposed on interstate commerce is "clearly excessive" in relation to the putative local benefits.

*Allstate Ins. Co. v. Abbott*, 495 F.3d 151, 160 (5th Cir. 2007) (internal citations omitted).

As Plaintiffs point out, both New Rule 174 and New Rule 190.8 require a physician to provide an in-person physical exam of a patient to create a relationship with that patient.  They maintain this requirement constitutes intentional discrimination against physicians located out of Texas and cannot withstand the strict scrutiny applicable to such regulations.  Plaintiffs concede the regulation is facially neutral, but contend the regulation is nonetheless subject to rigorous scrutiny because, even though it does "not in explicit terms seek to regulate interstate commerce,

---

[5]  In addition, the Court notes that, even if the theories are contradictory, a litigant is permitted to offer alternative theories of liability.

it does so nonetheless by its practical effect and design." *C & A Carbone, Inc. v. Town of Clarkstown*, 511 U.S. 383, 394 (1994). The TMB, in turn, contends the challenged rules are not discriminatory, and thus not subject to rigorous scrutiny.[6]  The TMB further maintains the rules withstand the lower level of scrutiny as Plaintiffs have not alleged facts sufficient to shown any burden imposed is "clearly excessive" in relation to the local benefits.

According to the TMB, the new rules are not discriminatory because "a Teladoc physician physically located in San Antonio advising a user in Dallas is no less inconvenienced by the requirement than a Teladoc physician in Oklahoma City." (Def. Mot. at 33).  Plaintiffs respond by citing cases holding the mere fact that a regulation burdens some in-state commerce, as well as interstate commerce, does not insulate it from a Commerce Clause challenge.  *See C & A Carbone*, 511 U.S. at 391 (ordinance requiring processing of waste to be performed within limits of town "is no less discriminatory because in-state or in-town processors are also covered by the prohibition"); *Dean Milk Co. v. City of Madison*, 340 U.S. 349, 354 n.4 (1951) (striking down ordinance requiring all milk in city to be pasteurized within five miles of city lines, finding it was "immaterial that Wisconsin milk from outside the Madison area [was] subjected to the same proscription as that moving in interstate commerce"); *Six Kingdoms Enters., LLC v. City of El Paso*, 2011 WL 65864, at *8 (W.D. Tex. Jan. 10, 2011) (striking down ordinance regulating sale price of puppies, finding "{w}hile it is true that the low price also likely thwarts the sale of pets in El Paso from other parts of Texas, this does not change the fact that the ordinance discriminates against interstate commerce.").

Plaintiffs further argue, even if the challenged rules are not viewed as discriminatory in effect and design, the rules cannot withstand a Commerce Clause challenge under even the lesser

---

[6]  It is worth noting that the Fifth Circuit has characterized "the jurisprudence in the area of the dormant Commerce Clause [as], quite simply, a mess," based on the Supreme Court's admitted failure to "produce a readily discernable standard for distinguishing between statutes that have discriminatory effects and those that merely create incidental burdens." *Churchill Downs Inc. v. Trout*, 589 F. App'x 233, 235 (5th Cir. 2014) (citing *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298 n.12 (1997)).

standard.  In support, Plaintiffs point to their allegations that Teladoc's business model, including obtaining and retaining national clients, depends on being able to provide telehealth in Texas without the requirement of conducting an in-person physical exam before treating patients.  (Am. Compl. ¶ 144).  Plaintiffs have further alleged the challenged rules do not provide local benefits because the current regulatory scheme mandates that physicians abide by standards of care which dictate when an in-person physical exam is necessary.  Further, they have alleged that the current standard of care permits a physician to provide "on-call" services to patients of other physicians without an in-person physical exam.  (*Id*. ¶¶ 137-38).  Finally, Plaintiffs have alleged the challenged rules are affirmatively harmful to public health because they reduce access to affordable and convenient treatment.  (*Id*. ¶¶ 129-34).

The Court finds Plaintiffs' allegations sufficient at this early stage of the litigation. Resolution of Plaintiffs' Commence Clause challenge is "one of degree," requiring the Court to determine "the nature of the local interest involved, and [] whether it could be promoted as well with a lesser impact on interstate activities."  *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).  This inquiry is inherently fact-intensive.  *See Colon Health Centers of Am., LLC v. Hazel*, 733 F.3d 535, 546 (4th Cir. 2013) (reversing dismissal of dormant Commerce Clause claim because "[t]he *Pike* inquiry, like the discrimination test, is fact-bound" and declining to "attempt to forecast what further investigation may demonstrate.").  Accordingly, the Court declines to dismiss Plaintiffs' Commerce Clause claim at this time.

## IV.  CONCLUSION

Accordingly, the Court hereby **DENIES** Defendants' Amended Motion to Dismiss (Clerk's Dkt. #64).

**SIGNED** on December 14, 2015.

ROBERT L. PITMAN
UNITED STATES DISTRICT JUDGE